Mr. Walker, you may proceed. Good morning, Mr. Counsel. May I please call? Your Honor, as I am Stephen Walker, and I represent the defendant appellate, Mr. Robert Maron, on behalf of the Office of the State Appellate Defendant. Today I'm presenting two issues before you, both interrelated in that the trial court considered improper factors during sentencing. The first improper factor considered during sentencing was the recorded interrogation or interview of Mr. Maron in a violation of his Sixth Amendment right, as he was represented by counsel at the time that those statements were given. The second issue is the trial court's improper consideration of the changes in the law, in the predatory criminal sexual assault law, as a sort of… of no consequence or something like that. Did I miss something? I don't believe she said it was of no consequence. I believe her exact statement was, the court has considered the pre-sentence investigation, has considered the facts surrounding the charges that the defendant is facing, has considered the victim's impact statements, the statements of the victims introduced that afternoon, the arguments of the State, the arguments of the defense, the statements of the defendant, and the statutory factors in aggravation and mitigation. So where did she consider… I assume you're talking about the State's argument about the change in the statute. Correct. Where does she reference that? She does not directly reference it, but at the same time, she does not state that she's not considering the State's argument. Don't we assume that the court considers only proper evidence, unless there's something to the contrary in the record? Your Honor, the judge states not that she considered only proper factors. She stated that she considered all of the arguments… Right, but don't we assume that the trial court considers only the proper evidence, unless there's something to establish that she did consider something improper? Do you mean a direct quote, Your Honor? Well, anything. In this case, my argument is that the evidence, absent any evidence to the contrary, the evidence indicates that she considered everything. She states that she considered everything. Okay. She didn't make any qualifications. She didn't say that I'm only considering proper evidence or proper factors. She didn't sentence him to life, did she? He did receive twice the minimum sentence. So this indeterminate sentence, again, requires this court to speculate as to what the judge made. Wasn't the maximum something like 67 years? He got something like 35 or so? Yes, but this was still above the minimum. This is still twice the minimum that he could have possibly received. Are you arguing that your client was entitled to the minimum sentence here? I'm not arguing that he was entitled to the minimum, but I am arguing that he was entitled to a sentencing hearing in which only proper factors were considered. We're talking about what the judge considered during the sentencing hearing. Didn't the trial court properly apply the exclusionary rule to the videotape statement when he borrowed it during the trial? Your Honor, in this case, the defendant pled guilty. So the video was only produced at the sentencing hearing? At the sentencing hearing. But before the trial, didn't the judge properly apply the exclusionary rule? So we see that the judge did that on that statement. Is that correct? Your Honor, the issue here, regardless of what happened pre-trial, the issue here is whether the court could have considered it at sentencing. And in this case, my client's position is that it could not because it was taken in contravention of the Sixth Amendment right. Now, this court in Pupil v. Rose held that the trial court could consider evidence obtained in violation of the Fourth Amendment at sentencing. However, the Sixth and Fourth Amendment are not code legal. They are exclusive documents. I'm sorry, go ahead. As our Supreme Court held in Pupil v. Cade, statements taken in contravention of a defendant's Sixth Amendment right cannot be produced at any trial or sentencing hearing. This is a direct quote from our court. Weren't Cade and Estelle, I believe, death penalty sentencing hearings? Correct. Doesn't that matter? Death penalty cases are just different? Your Honor, it would matter had our court made that distinction. But notably, even after discussing the death penalty in depth in its analysis, the court concludes by stating that the statements taken in contravention of the defendant's Sixth Amendment right cannot be produced at any trial or future sentencing hearing. They did not state or limit it expressly to death penalty sentencing hearing. What was the basis upon which the trial court made a finding that your client was remorseful? My client did express remorse when allowed to give the statement. He did indicate that he was very sorry to the victims and the court did consider this. My point is, did he make a remorseful statement at any other time other than the DVD or CD rendition of his interrogation? According to the pre-sentence investigation report, my client did not make any remorseful statements until sentencing. When you say until sentencing, you mean in open court? In open court, correct. And he made prior statements in his conversations, discussions with the police officers regarding the violation of the Sixth Amendment? Correct. During his interrogation, he did state or did passively accept responsibility but in a very circuitous way. He didn't accept full responsibility like he did during the sentencing hearing. And this evidence, which the state has acknowledged, only served to cooperate what the pre-sentence investigation report of the victim stated. And what my client acknowledged during sentencing was that initially he was not remorseful. There was no reason to present this evidence other than as evidence in aggravation. Do you believe or not believe that the trial court should have weighed circumstances relating to the deterrent effect and whether or not the evidence should be considered for purposes of sentencing based upon weighing the issues rather than just determining that there was a violation and therefore it's inadmissible? Yes, Your Honor, I do believe there should have been a weighing in this case to determine whether or not the evidence even warranted admission. Again, it was cooperating evidence only offered in aggravation to potentially increase his sentence. If there's a weighing of the evidence or the circumstances and it is determined to be error, who has to establish the harmless error or that there was harmless error beyond a reasonable doubt? I believe that verdict would be on the state, Your Honor. Well, you have to establish error and you have to establish prejudicial error. If the state has a situation where it is required to prove that the error is harmless beyond a reasonable doubt, that's another thing I'm asking you. If there's supposed to be weighing, then is it your responsibility to establish prejudice based upon the admission of the evidence that was weighed and the trial court exercised its discretion? To make sure I'm understanding correctly, you're asking on appeal? Is it defense counsel's job to show that this statement prejudiced the client? Let's put it another way. If you watch that video, it portrays your client as a very remorseful defendant. The judge found that he was remorseful and the judge rendered a sentence that would indicate that a reasonable person could conclude that the sentence wasn't as great as it was because the judge found that the defendant was remorseful and therefore probably capable of rehabilitation. And I believe he will be allowed to be released when he's 75 based upon the sentence that she rendered. Is that correct? I would agree with the last part of your statement, Your Honor. Regarding the first part of your statement in which the defendant appears remorseful, I believe that is one interpretation. But as defense counsel and I argue now, another possible interpretation is that he passively accepted responsibility without accepting that he was in control of his actions as he later did during the sentence. What was disclosed in his admissions, his statements that would prejudice a trial court against him as opposed to not prejudice a trial court against him? Well, first, Your Honor, it's doubtful that the State would have presented this evidence that it had not been trying to prove something. Sometimes the State just takes the court to their mouth. So let's assume the question is where's the prejudice? Not just because the State introduced it doesn't make it sui sponte prejudicial. Where's the prejudice in this video? Your Honor, I was not arguing that it was sui sponte prejudicial. But taking everything in context, taking everything in totality, there are multiple ways of viewing this video. Your Honor viewed this as a statement of remorse. I, on the other hand, viewed it as my client sounding as though he was making excuses, like things just sort of happened, you know, I didn't really have any intention of doing this. Whereas later on in sentencing, he states he takes full accountability for his actions. Then how is this nothing more than cumulative? If it doesn't establish something that's so heinous or egregious or despicable, and it is, as you've described, is it same old, same old? Or is it something that's distinguishable and you can put your finger on it and say, I don't know, I can't define obscenity, but I know it when I see it. Can you say, I can't define egregiousness, but based upon this video, I can see that what he did based upon what he said was egregious? Your Honor, first I believe, in response to your question, first I believe that we should analyze this based on the violation, which is of the 6th Amendment. And it's highly, based on defense counsel statements below, Mr. Marin would not have been allowed to make the statements he made to do everything he did at counsel level. So taking it from that standpoint, yes, it may have been cumulative or cooperative, but the purpose in presenting this evidence was to increase the sentence. It was presented as video. It was presented by the state as aggravation. Correct. It was presented as videographic evidence to inflame the trial court's passions. There was no need to present this video other than to, again, cooperate with PSI, which stated that Mr. Marin hasn't accepted full responsibility for his actions. He downplays responsibility for his actions. The video cooperated with PSI. As far as the second issue is concerned, again, the trial court stated, this is the trial court statement, that it considered all the arguments, including the arguments from the state. Part of the state's argument, which the court allowed of the defense counsel's objection, was that the trial court should consider the reasoning behind the statutory amendment. If the court did consider this, as its statement seemingly suggests it did, this was improper. And because Mr. Marin didn't receive a sentence scored at the lowest end possible but twice the minimum, this court cannot speculate as to whether the trial court Would your argument be if he'd gotten the minimum, we would assume that the court didn't consider the statutory argument? It would definitely lean more toward considering it. So your position would be that if the trial court allows argument at sentencing, as it should, that it has to articulate precisely what it has considered and not considered? In this case, Your Honor, I think Not this case. What's the takeaway from it? If we were to rule in your favor, are we saying to trial judges, you have to articulate very specifically what you considered and, more importantly, what you did not consider? They don't have to precisely consider that. Again, the court can simply state that I've considered only proper evidence. What does that mean? Do we know what's proper and improper in the judge's mind? Your Honor, Here's my point. What's the difference between a judge saying, I only considered the good stuff, the proper stuff, versus the presumption that we make now that trial judges considered only proper evidence, both in a bench trial as well as sentencing? Your Honor, in this case, the trial judge stated that she considered everything. She considered the state's argument. She didn't say, I considered only the proper portions of the state's argument or I didn't consider. There's no indication that she removed this improper argument from her consideration. And vice versa. There's no indication that the court accepted or assigned any weight to this argument. Isn't that correct? That would be correct. But, again, the twice the minimum sentence leaves this court to speculate as it held he will be doubting the cause must be remanded for a new sentencing hearing. Your time's up. You'll have an opportunity to make rebuttal. Thank you. Mr. Barrett, you may proceed. Good morning, Your Honor. Good morning. This is the court. Do you think it was error for the state to argue that even though the statute was enacted after the alleged offenses that the judge should maximize the sentence since it couldn't sentence the defendant to life in prison? Well, Your Honor, I think it's important to note that we're talking about a sentencing hearing in 2017. This is a law that was passed in 2000. So as a mere frame of reference, I think calling attention to a statute that the court may have been sentencing and used to sentencing defendants under and then distinguishing it may have been the proper thing to do in this case. Because here we are 17 years later. These are crimes that happened before 2000. So by bringing up the law in 2000 and then distinguishing it and saying, but wait, Your Honor, this does not apply to this case, and then going into and detailing a law that does apply and saying, in this case, you have discretion. Under the law that applies in this case, you have discretion. And under that discretion, you can consider all the evidence before the court. Unfortunately, we have to usher in these victims to relive and rehash their pasts, which is not easy to do. But that's what was done. So I think it was important to distinguish based on the length of time that law had been in force and carefully distinguish between it and say that is not the law that applies today. The underlying seriousness of the offense and the fact that the defendant is a multiple offender in this case is underscored. There's no way around it. And that was the only takeaway that the prosecutor was emphasizing. So in those circumstances, I think it was appropriate. So it's your position that I understood what you just said is that the prosecutor was bringing this to the court's attention so that the court, presumably being aware of the amendment, would know that this is a case that cannot be sentenced under those parameters. Is that correct? Correct. These are crimes that happened three years prior to the passing of that law. So we're going back beyond 17 years. We're looking at almost 20 years in the past. So as a frame of reference, and then going into the law that did apply, I think in this case it was appropriate. And then, more importantly, to have distinguished it and to have emphasized this is not the law that applies today. And then going in and being careful to characterize the law that does apply, that distinguishing would be important in this case. And I think that it's more than reasonable under the circumstances. What about the video? With respect to the video, what do we know? This is a Schomburg detective investigating a crime against his stepdaughter, a separate crime. So we know the defendant was properly Mirandized regarding a separate crime for which the Sixth Amendment had not attached. And in the process of interrogating him on that crime and in concluding, there was a very general question asked. Do you have anything else to tell me? Do you have any other information? There was no specific seeking of information about the McHenry County cases, the three cases at issue today. There were no questions asked regarding those victims. But in response to a very general line of questioning, the defendant proceeded to divulge and volunteer the information to the detective. So, you know, in this case, notwithstanding the prosecutor's comments, the people disagreed with the characterization of the prosecutor that this was a violation of Defendant Sixth Amendment rights. Primarily because the Schomburg detective was investigating a separate crime. It was initiated regarding the young defendant's stepdaughter. And the interrogation was never coercive. It was never pointed at. Does that matter in a Sixth Amendment violation? Well, that's what would trip a Sixth Amendment violation, is to specifically interrogate a defendant, a criminal defendant, on charges which are pending. And for which he has counsel. And for which he has counsel. Correct. And that's exactly what this Schomburg police officer did. That isn't exactly what he did. Well, he does ask a general question. Anything else you want to get out of your chest? What do you want to tell me? And then the defendant begins to talk about one of the three, and it escapes me at this moment. And then the officer does prompt him, well, what about the other, one of the other three victims? Again, I don't recall the order of the names. It was A.A. and C.D. And what about that prompting? What about A.A. or what about C.D.? At that point, the defendant had volunteered the information. Not about that. That was the whole point. He had talked about some of the victims, but the officer prompts him and asks him about, well, what about the other victim? In this attorney's review of the video, that isn't exactly what my takeaway was. Well, it was mine. So let's assume for the sake of argument, that's the takeaway. Okay. What's your response to that? I mean, he prompts him. There's no question about it. The prompting occurred after the voluntary confession took place. Of the first two, not the third one. Okay. So B.N. is the stepdaughter. Right. That's a whole different, that's not a sex offender violation. And we have A.A. who has volunteered. And then we have C.D. who has also volunteered. And then the officer prompts him. Wasn't there another person who was to that effect? There was not another. At that point, the Schaumburg officer is investigating crimes against kids. Given his history, given this defendant's history of crimes against children, if he's willing to divulge information about other kids and other crimes that may have occurred, that officer was acting reasonably under that circumstance to gather that information. There's a strong public interest in gathering that information. But is it your position that the police officer goes in and says one thing about another crime, that we can now begin to question him on all kinds of things with impunity, that he doesn't have to be aware that there's counsel appointed on these cases? I mean, how do we, if the purpose is to deter unlawful conduct by police officers, how do we do that by saying, oh, well, you know, we're supposed to ask questions about crimes against children? Where's the balance? I think looking at the motivation behind the interrogation and what's motivating the gathering of information initially in this case about the stepdaughter, segueing into volunteering information in response to a very general question, we don't have any evidence that this detective was infringing a Sixth Amendment right to counsel or attempting to. Is the police officer charged with asking or finding out before he goes in to interrogate someone, does this defendant have counsel? If the officer is aware that he's represented on a matter, he would. Okay, so are we promoting blinders then? Don't ask? Then you won't be charged with that information? I mean, at some point, aren't these officers at the court as well? I think you have to examine the circumstances of the case and what the officer reasonably knew at the time. Why should officers be allowed to ask open-ended questions that aren't qualified so easily as is there anything else you want to tell me about your stepdaughter's incident? There's a strong public interest in investigating crimes, especially sex crimes against minors. Isn't there a strong public interest in not violating someone's constitutional rights? Yes, there is. That's a balancing act that the officer was faced with at that time, and I think under the circumstances, the way the questioning went, I think was in keeping with the Sixth Amendment rights of this defendant. Then I gather that if you were to weigh in the future other instances of a violation of the Sixth Amendment, you would find that the right of the people to be secure in their houses from criminals should preempt and overtake the rights of an individual to remain silent and not to be interrogated when he has or she has an attorney. Well, there needs to be probable cause that a crime has occurred. In this case, the stepdaughter had offered a statement to authorities that was probable cause to investigate an important crime. I'm not quite sure I understand what probable cause has to do with violating a right. Well, you're suggesting that there was enough for this police officer to go talk to this defendant about the stepdaughter. To go talk to him, yeah. I think Justice McClaren's point is, is it okay to then say, gee, is there anything else you want to tell me? And say, well, it's not my job to find out if you have counsel on any other cases, but I'd just go ahead and ask you about it anyway. I think given his history and pattern, it was... The officers or the defendant? The defendant. Given his history of abusing young girls, I think asking a general open-ended question, trying to seek that information was okay. But if he said, I robbed a bank last year, would that have been admissible? If he decides to confess at that point to that, unprompted, that's... You know, the defendant has... And he has counsel on that case, too. Is that okay? If it's not prompted and it's volunteered and the police were not... But it is... Is there anything else you... Where's the line? Where do we say to trial judges in the future, here's where you go too far in a Sixth Amendment violation, this is okay? I think the police need to be able to ask open-ended questions. I mean, that's just part of the process. Even though the defendant has counsel? Yes. What's the balancing test that the trial judge should undergo here? Because here... I mean, the Sixth Amendment violation occurs at the time of this interview. Theoretically not at the time it's introduced, but the violation occurred in that interrogation room. What's the balancing test that the trial court should employ? It's a fact-specific inquiry. You look at, you know, what is motivating the officer to conduct the interrogation. You know, we have in Kidd, one of the cases cited by the defendant, that was a death penalty case, the officers were aware. They were already aware of the defendant being represented by counsel on that crime and they proceeded to simply Mirandize him and then question him regarding that crime and then a fire and arson. That's obviously distinguishable from this case. The Chamba detective had, you know, he had an awareness that this was a new crime being investigated, BN, the abuse of the stepdaughter, the defendant was not represented in that matter. In good faith, he was questioning him. And then, yes, there was a general question asked. Given this defendant's history of sex crimes against minors, that was a reasonable question to ask. We want to get at any information we can. And I think the officer needs to be able to do that. Just out of curiosity, do you have any citation to authority for that premise or that conclusion, that argument? That you can ask any open-ended question in the interest of justice, despite the fact that the open-ended question, based upon the fact that the defendant is presently being prosecuted on charges, would, if he was to comment on anything, it would probably be something that he's done or something that he hasn't done. And he supposedly did something because he's being prosecuted for it. So the probabilities are that the open-ended question will be answered with information relating to that which is most probable, and that would be the pending charges. In People v. Kidd, the citation is at 432, 129 L2D, at 432, the state must knowingly circumvent the accused's right to assistance of counsel. So I think that open-ended question would have to be tied into a specific factual scenario where the officer or the detective had some awareness. This is a fact-intensive analysis. You look at the case. What did the officer know? Was it one crime, or was there a whole slew of crimes that he may be responsible for? Let's look at it slightly differently. Let's look at it this way. If the officer knows that there are pending charges and or the defendant has a lawyer, then the police officer is put on notice that open-ended questions could easily result in a violation of the defendant's constitutional rights. And if the police officer was a reasonably competent police officer, he could ask questions that wouldn't encroach. Are there any other questions? Thank you. Your time is up. You won't have to answer the question. Mr. Walker, you may proceed with your rebuttal. Very briefly, Your Honor. Justice McLaren, as you pointed out, there was a way for Schomburg police to go about interrogating the defendant in this case. It was clear that he had been charged with the instances and the officer could have asked questions after properly Mirandizing him, knowing that my client was going down the route of talking about a case in which he had been appointed counsel. You made that assumption. How does he know that he has counsel? How does that Schomburg officer know that this defendant has counsel on the, we'll call it the present case, the current case?  Don't go outside the record. Okay. Limiting it to the record, then, I will withdraw this argument. There's no evidence that he knew he had counsel. But at the same time, there's no evidence that he didn't. So, again, this argument is nullified. Is there any evidence that he was incarcerated? Yes, there was evidence that he was incarcerated because he was shipped to Schomburg. Was there any evidence that he couldn't make a bond? Yes, because he was still incarcerated in the jail. Was there any evidence that he was indigent? Yes, he had been appointed a public defendant. Now, you gave me an answer that was not responsive to the question. I asked you if he was indigent, and you said yes. Now, if you know as a matter of record that he had the public defender appointed, then you can say that. But I was under the impression that that wasn't on the record. Or, I see he had the public defender appointed, but it's not on the record whether or not the police officer knew that the public defender was appointed. Correct. Okay. So, that argument is null. Well, what did the trial court find? Did the trial court find that there was no violation? No, the trial court did not find that there was no violation. In fact, the state conceded below, for reasons that may exist outside of the record, that there was a clear violation of the Defendant's Sixth Amendment Court. So, there was a stipulation that there was no need for anything to be placed on the record as a factual basis to determine whether or not the police officer did or did not know whether or not he was violating the individual's rights. Correct. This is something that the state conceded below. Correct. Counsel, you would agree that, setting aside Sixth Amendment violations, what's contained on that video is otherwise relevant and material? Yes, it's relevant and material, but it's also prejudicial. Or potentially prejudicial, based on your viewing of the evidence. Potentially prejudicial. But if the purpose of excluding it is to prevent future, I'll call it misbehavior by police, what is accomplished here? As opposed to a, let me make myself a little bit more clear, a Fifth Amendment violation, the harm to the defendant or the violation of his rights is when that evidence is introduced against him at trial. Therefore, we exclude it. But here, the violation occurred some weeks, months before. So what purpose is served by excluding evidence that is otherwise relevant and material? And we want trial judges to have as much relevant and material evidence as possible when crafting a sentence. Your Honors, as you recently discussed with the state, there is a balancing act. The defendant obviously has a Sixth Amendment right to counsel in order to avoid making statements that would increase his possibility of being found guilty. At the same time, yes, the trial court at sentencing should have certain information available. But I believe that the balance here is when the defendant has been charged, when the defendant is facing, when there's evidence to know that the defendant has been charged, further questioning by police can be used for any number of reasons. It can be used to increase his sentence at the sentencing hearing, or obviously, during trial, it can be used against him as a determination of his guilt. Are you saying that this statement could have come in at trial? No, that it couldn't come in at trial. Could not come in at trial. Could not come in at trial. There's a reason we excluded it at trial. Right. Because it is reliable evidence that the defendant has committed this offense. But at the same time, there's also prejudice to my client in that it could be used to increase his sentence. It could be seen as a factor of aggravation. And defendants, the Sixth Amendment should protect defendants against any manner of improper consideration or improper considerations, either at trial or by the judge at sentencing, because it were suicidal. Any other questions? No. Thank you. Time is up. We're going to take a recess for lunch. There's another case on the call. Court's in recess.